IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

RICHARD L. LAWSON,

        Plaintiff,

v.                           Case No. 2:07-cv-00334

JEFF HALL, Sergeant, Correctional Officer,
Mount Olive Correctional Complex,
in his official and individual capacity,
ROBERT RHODES, Major, Correctional Officer,
Mount Olive Correctional Complex,
in his official capacity,
PAUL PARRY, Associate Warden Security,
Mount Olive Correctional Complex,
in his official capacity,
THOMAS McBRIDE, Warden,
Mount Olive Correctional Complex,
in his official capacity, and
JIM RUBENSTEIN, Commissioner,
West Virginia Division of Corrections,
in his official capacity,

        Defendants.

## PROPOSED FINDINGS AND RECOMMENDATIONS

On May 24, 2007, the defendants removed this civil action from the Circuit Court of Kanawha County, West Virginia, pursuant to 28 U.S.C. § 1441, because Plaintiff's Complaint alleges a claim under 42 U.S.C. § 1983. (Docket # 1). This matter is assigned to the Honorable David A. Faber, District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). The Complaint was filed on April 24, 2007, in the Circuit Court of Kanawha County.

## Allegations of the Complaint

Plaintiff alleges that on January 26, 2007, at the Mount Olive Correctional Complex ("MOCC"), Plaintiff asked a question, and defendant Hall responded, using a racial slur ("Did you not read the sign!  It says don't give the NIGGERS cinnamon rolls") and a homophonic slur ("GAY DICK SUCKING FAGGOT") to Plaintiff, and then physically assaulted Plaintiff by "kneeing" him to cause him severe pain.  (# 1, Complaint, "Facts," ¶¶ 1-3.)  On January 29, 2007, three correctional officers told Plaintiff, a correctional counselor, and a case manager that defendant Hall had bragged about his actions as to Plaintiff.  Id., ¶¶ 4-7.  Plaintiff filed a grievance and pursued his administrative remedies.  Id., ¶¶ 9-12, 15-16.  After defendant Hall served a period of suspension, he returned to work in approximately a week, sees Plaintiff daily, and "leer[s] at [Plaintiff] in a very malicious and provoking manner." Id., ¶¶ 13, 16.

In Count I, Plaintiff claims that defendant Hall acted negligently, was deliberately indifferent to the risk of harm and danger to Plaintiff when he physically assaulted Plaintiff, causing pain and emotional distress, using slurs, intending to cause harm to Plaintiff, and bragging about it.

Count II claims that defendant Rhodes was negligent in his supervision of defendant Hall, thereby contributing to and affirming Hall's actions toward Plaintiff.  Plaintiff also claims

2

that defendant Rhodes failed to protect Plaintiff from an environment in which staff would assault an inmate and then brag about it.

Count III claims that defendant Parry was negligent in his supervision of defendant Hall, thereby contributing to and affirming Hall's actions toward Plaintiff. Plaintiff also claims that defendant Parry was deliberately indifferent to the situation and failed to protect Plaintiff from an environment in which staff would assault an inmate and then brag about it.

Count IV alleges that defendant McBride was negligent in his supervision of all the defendants, and refused to consider Plaintiff's grievances, thereby contributing to and affirming Hall's actions toward Plaintiff. Plaintiff also claims that defendant McBride was deliberately indifferent to the situation and failed to protect Plaintiff from an environment in which staff would assault an inmate and then brag about it.

Count V alleges that defendant Rubenstein failed to protect Plaintiff from the physical and verbal assault by staff, was negligent in his supervision, and thereby affirmed and ratified the actions or inactions of all defendants.

For relief, Plaintiff seeks a declaratory judgment that the defendants violated his constitutional rights, an injunction preventing the defendants from retaliating against Plaintiff, an injunction requiring the defendants to train staff in proper

security procedures and to abide by their policy directives, procedures, and state law, compensatory damages, and costs.

## Pending Motions

Prior to the removal of the case from the state court, defendants Rhodes, Parry, McBride and Rubenstein filed a "Waiver of Reply and Alternative Motion to Dismiss." (# 4). Plaintiff filed a response thereto. (# 5).

On May 24, 2007, defendant Jeff Hall, by counsel, filed a Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, with accompanying exhibits (# 2). On May 29, 2007, the other defendants, by counsel, filed a "Renewed Waiver of Reply and Alternative Motion to Dismiss," with accompanying exhibits (# 7), and a Memorandum of Law in support thereof (# 8).

On June 1, 2007, Plaintiff filed a Response (# 9) to defendant Hall's motion to dismiss, and Objections (# 10) to the other defendants' renewed waiver and motion to dismiss.

## Defendant Hall's Motion to Dismiss (# 2)

Defendant Hall raises four grounds for his motion to dismiss: (a) abusive language does not constitute cruel and unusual punishment; (b) being "kneed" did not result in physical injury to Plaintiff; (c) defendant Hall is entitled to qualified immunity; and (d) Plaintiff failed to exhaust his administrative remedies.

Plaintiff's response (# 9) argues that defendant Hall's

4

actions constituted a hate crime, that he suffered physical and emotional injury, that Hall is not entitled to qualified immunity, and that he met the exhaustion requirement.

Exhaustion of Remedies

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("the PLRA") states that, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Prison conditions" means " . . . conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings." 18 U.S.C. § 3626(g)(2). A "prisoner" is defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

In Booth v. Churner, 532 U.S. 731 (2001), the Supreme Court of the United States held that exhaustion of administrative remedies is mandatory, regardless of the type of relief sought or offered through the administrative procedures. Id. at 741. In Booth, the Court required exhaustion even where the grievance process does not

permit the award of money damages, and the prisoner seeks only money damages, as long as the grievance tribunal has authority to take some responsive action.  Id.

In Porter v. Nussle, 534 U.S. 516, 531 (2002), the Court held "that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or other some wrong."  Not only must a prisoner exhaust his administrative remedies, but he must also do so properly.  Proper exhaustion "'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits.'"  Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 2385 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002). [Emphasis in the original.]) That is, a prisoner must complete the administrative process in accordance with the applicable procedural rules of the process, including the deadlines.

The Court ruled in Jones v. Bock, 127 S. Ct. 910, 921 (2007), that an inmate's failure to exhaust remedies under the PLRA is an affirmative defense; the inmate need not demonstrate in his complaint that he has exhausted applicable remedies.  Jones also held that an inmate does not automatically fail to exhaust when the inmate sues one or more defendants not named in the pertinent grievances.  Id., at 923.  If a complaint contains claims, some of

which have been exhausted, and some of which have not been exhausted, the entire complaint is not dismissed; the court proceeds only on the exhausted claims.  Id., at 924-26.

The West Virginia Division of Corrections ("WVDOC") promulgated regulations establishing an Inmate Grievance Procedure, W. Va. C.S.R. § 90-9-3 et seq.  The promulgation of the Procedure was mandated by W. Va. Code § 25-1A-2(b), part of the West Virginia Prisoner Litigation Reform Act.

Defendant Hall contends that Plaintiff did not completely exhaust his remedies.  Relying on Plaintiff's Complaint, paragraph 16, Hall argues that "there is no indication that said appeal serves to exhaust all of his available remedies."  (# 2, at 10.)

Plaintiff responds that West Virginia Code § 25-1A-2(c) exempts from the exhaustion requirement any claims relating to physical or sexual abuse, and that § 25-1A-2(a) deems a claim to be exhausted if the inmate complied with the requirements, and sixty days have elapsed.  (# 9, at 8-9.)  Defendant Hall did not file a reply to this contention.

West Virginia Code § 25-1A-2(a) provides as follows:

(a) An inmate may not bring a civil action until the administrative remedies promulgated by the facility have been exhausted; Provided, That the remedies promulgated by the facility will be deemed completed within sixty days from the date the inmate filed his or her initial complaint if the inmate fully complied with the requirements for filing and appealing the administrative complaint.

Plaintiff filed his G-1 grievance on January 29, 2007.  (# 4, Ex.

1.)  Defendants do not contend that he did not file the grievance or that he did not appeal it properly.  Accordingly, by operation of § 25-1A-2(a), Plaintiff is deemed to have exhausted his remedies on or about March 30, 2007, more than three weeks before he filed his Complaint.

> West Virginia Code § 25-1A-2(c) states:
>
> (c) Notwithstanding any other provision of this code, no inmate shall be prevented from . . . bringing a civil or criminal action alleging past, current or imminent physical or sexual abuse; if such a civil or criminal action is ultimately dismissed by a judge as frivolous, then the inmate shall pay the filing costs associated with the civil or criminal action as provided for in this article.

Plaintiff's Complaint alleges that defendant Hall "kneed" Plaintiff and bragged about his actions to others.  (# 1, Complaint, "Facts," ¶¶ 3-5.)  The common understanding of the term "kneed" is that one person forcibly and violently raised his leg, bent at the knee, between the legs of another person and struck the other person's genital area.  Such an act, depending upon the force used, can be very painful and presumably can cause injury; because it is intended to inflict pain and is directed at the genitals, it falls well within the definition of "battery," W. Va. Code § 61-2-9(c). Whether or not "kneeing" falls within the statutory definitions of sexual assault or abuse set forth in the Code, W. Va. Code § 61-8B-1 et seq., it is an abusive act, aimed at the genitals.

Motion to Dismiss Standard

The remaining three contentions in defendant Hall's Motion to

8

Dismiss appear to be based on Rule 12(b)(6) of the Federal Rules of Civil Procedure.   In <u>Bell Atlantic Corp v. Twombly</u>, 127 S. Ct. 1955, 1968-69 (2007), the Supreme Court observed that a motion to dismiss should be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."   While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." <u>Id.</u> at 1964-65.

<u>Abusive Language, Significance of Injury, Emotional Injury</u>

Defendant Hall argues that verbal harassment of an inmate by a correctional officer does not constitute the violation of any federally protected right and is not actionable under 42 U.S.C. § 1983.   (# 2, at 4.)   In support of his contention, Hall cites numerous cases to the effect that, as a general rule, verbal abuse of inmates by guards, without more, does not state a constitutional claim.   <u>Id.</u>, at 4-5.   Hall further claims that Plaintiff has not alleged a "serious or significant physical or emotional injury," citing <u>Strickler v. Waters</u>, 989 F.2d 1375 (4th Cir. 1993).[1] <u>Id.</u>, at 5-6.   In fact, Hall asserts that Plaintiff "concedes that his

---

[1] <u>Strickler</u> is a case addressing conditions of confinement, not physical and emotional abuse, and is not on point.

only injury is *emotional* in nature." Id., at 6.  Hall also relies on 42 U.S.C. § 1997e(e), which provides that a claim for mental or emotional injury cannot be brought without a prior showing of physical injury.  Id., at 5.

Plaintiff responds that the combination of the verbal abuse and the physical act constitutes malice and sadism actionable under the Eighth Amendment.  (# 9, at 4-7.)  He categorically denies that he suffered only emotional injury, asserting that "[w]hen this assault was done to Plaintiff, it cause[d] severe pain."  Id., at 5-6.

The undersigned finds none of defendant Hall's contentions to be persuasive.  Plaintiff has not conceded that he suffered only emotional injury.

In Hudson v. McMillan, 503 U.S. 1 (1992), the Supreme Court held that use of excessive physical force against an inmate may constitute cruel and unusual punishment even when the inmate does not suffer serious injury.  The Court held "that whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley [v. Albers, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  503 U.S. at 6.  The majority opinion noted that "[t]he objective component of an Eighth Amendment claim is

10

therefore contextual and responsive to 'contemporary standards of decency.'" 503 U.S. at 8. [Citation omitted.]

> In the excessive force context, society's expectations are different. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. [Citation omitted.] This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury. Such a result would have been as unacceptable to the drafters of the Eighth Amendment as it is today. * * *
>
> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. [Citation omitted.] The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." [Citations omitted.]

Id., at 9-10. Near the conclusion of the opinion, Justice O'Connor wrote: "To deny, as the dissent does, the difference between punching a prisoner in the face and serving him unappetizing food is to ignore the 'concepts of dignity, civilized standards, humanity and decency' that animate the Eighth Amendment." Id., at 11.

The PLRA was passed after Hudson was decided, and it is generally understood that 42 U.S.C. § 1997e(e) incorporates the *de minimis* standard described in Hudson. Post-PLRA cases have held that sexual assaults are not part of a prisoner's punishment, and constitute more than *de minimis* injury. See Berryhill v. Schriro, 137 F.3d 1073, 1076 (8th Cir. 1998); Liner v. Goord, 196 F.3d 132,

11

135 (2d Cir. 1999); <u>Calhoun v. Detella</u>, 319 F.3d 936, 940 (7th Cir. 2003).

Viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party, it appears that defendant Hall's use of demeaning and abusive language and his contemporaneous physical assault of Plaintiff's genitals were unprovoked, were not in the context of a prison disturbance, and are probative of Hall's malicious and sadistic use of force to cause harm to Plaintiff. Under <u>Hudson</u>, Plaintiff need not produce evidence of severe <u>injury</u>. 503 U.S. at 9. He has alleged that Hall's action caused him "severe <u>pain</u>." (# 1, "Facts," ¶ 3.) The words and actions of defendant Hall, as pleaded by Plaintiff, constitute conduct which is "repugnant to the conscience of mankind." 503 U.S. at 10. Plaintiff has stated a claim upon which relief can be granted.

<u>Qualified Immunity</u>

Defendant Hall's conduct toward Plaintiff, if proven to be consistent with the allegations in the complaint, was reprehensible, and any reasonable correctional officer, in January of 2007, would have known that unprovoked abuse and battery of an inmate would violate the inmate's constitutional rights to be free of malicious and sadistic violence. It is premature to determine whether Hall is entitled to qualified immunity.

**Defendants Rhodes, Parry, McBride and Rubenstein**

12

Defendants Robert Rhodes, Paul Parry, Thomas McBride, and Jim Rubenstein ("the MOCC defendants") are/were supervisory personnel at Mount Olive Correctional Complex.  (David Ballard has succeeded Thomas McBride as the warden at Mount Olive.)  Plaintiff alleges that at the time of the incident in question, Rhodes was Chief Correctional Officer or Chief Security Officer, Parry was Associate Warden for Security, McBride was Warden, and Rubenstein was Commissioner.  He sues each of them only in their respective official capacity.

Prior to removal, the MOCC defendants filed a Waiver of Reply and Alternative Motion to Dismiss (subsequently docketed as # 4), asserting that they are entitled to qualified immunity, and that Plaintiff suffered no physical injury.  Plaintiff filed a Response in opposition (subsequently docketed as # 5).  The MOCC defendants renewed their Waiver and Motion (# 7), and submitted a memorandum in support (# 8).  Plaintiff filed an Objection, arguing that the renewed Waiver and Motion was a "second bite at the apple." (# 10.)

The PLRA permits a defendant to waive the right to reply to an action brought by a prisoner under 42 U.S.C. § 1983.  42 U.S.C. § 1997e(g)(1).  The court may require a defendant to file a responsive document "if it finds that the plaintiff has a reasonable opportunity to prevail on the merits."  42 U.S.C. § 1997e(g)(2).  The waiver applies to actions filed pursuant to 42 U.S.C. § 1983; as to other actions, the usual Rules of Civil

Procedure apply.

Plaintiff alleges the following claims against each of the MOCC defendants:

Robert Rhodes:
    Negligent supervision of defendant Hall
    Negligent failure to train defendant Hall
    Failure to protect Plaintiff from the environment of abuse
Paul Parry:
    Negligent supervision of defendant Hall
    Deliberate indifference by not personally handling the grievance
    Failure to protect Plaintiff from the environment of abuse
Thomas McBride:
    Negligent supervision of all defendants
    Refused to consider properly Plaintiff's grievances
    Deliberate indifference in failing to respond timely to Plaintiff's grievances
    Failure to protect Plaintiff from the environment of abuse
    Deliberate indifference to Plaintiff's safety as shown by returning Hall to the same position
Jim Rubenstein:
    Failure to protect Plaintiff from the environment of abuse
    Negligent supervision of all defendants.

He seeks an award of $10,000 from each of the MOCC defendants "in their official capacity and each of them in individually in their official capacity." (# 1, Complaint, Relief, item 7, p. 9.) As noted above, Plaintiff also seeks declaratory and injunctive relief.

The Eleventh Amendment to the Constitution of the United States prohibits the recovery of money damages from state officials sued in their official capacities. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); Biggs v. Meadows, 66 F.3d 56, 59 (4th Cir. 1995). All of the defendants are employees of the State of West Virginia; an action brought against a State employee in his

14

official capacity is an action brought against the State itself. Thus all of Plaintiff's claims for money damages against all defendants in their official capacities are barred and must be dismissed.

The MOCC defendants raise the defenses of qualified immunity, lack of supervisory liability, and lack of physical injury to Plaintiff. (## 4, 8.) They do not raise the defense that Plaintiff did not exhaust his available remedies as to his claims relating to supervisory liability (supervision, training, etc.) against these defendants (the only grievances submitted to the court address defendant Hall only); thus the court will address Plaintiff's claims.

In order to establish liability of supervisors for the actionable constitutional violations committed by a subordinate like defendant Hall, a plaintiff must satisfy three elements:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). In order to establish the first element of knowledge of risk, a plaintiff must show: "(1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and

unreasonable risk of constitutional injury to the plaintiff." Id. (quoting Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984)).  A plaintiff can establish the second element of deliberate indifference by showing a supervisor's "continued inaction in the face of documented widespread abuses." Id. This is a heavy burden and cannot be satisfied by pointing to a single incident or isolated incidents. Id. The third element of causation includes both cause in fact and proximate cause. Id.

Plaintiff's Complaint fails to state a claim for supervisory liability upon which relief can be granted.  His Complaint contains some "formulaic recitation of the elements of a cause of action," Twombly, 127 S. Ct. at 1964-65, but he alleges no facts that meet the Shaw v. Stroud three-element test.  The only fact alleged by Plaintiff in his Complaint which arguably addresses any part of the test is this: "This is not the first assault on an inmate by staff at the Mount Olive Correctional Complex." (Complaint, Count V, ¶ 1.)  There is no suggestion that the MOCC defendants had any reason, prior to January 26, 2007, to believe that defendant Hall would engage in the conduct alleged in the Complaint.  Without such an allegation, there is no fact that is plausible on its face on which to base a claim to relief.  The possibility that a staff member has, at some point, assaulted an inmate at MOCC, is insufficient.

Based on the foregoing discussion and analysis, it is not

16

necessary to address the MOCC defendants' claim to qualified immunity.

## Proposed Findings

The undersigned proposes that the presiding District Judge **FIND** as follows:

1.  By operation of West Virginia Code § 25-1A-2(a), Plaintiff was deemed to have exhausted his remedies on or about March 30, 2007, more than three weeks before he filed his Complaint.

2.  Pursuant to West Virginia Code § 25-1A-2(c), Plaintiff was not required to exhaust his remedies with respect to his complaint of being "kneed" by defendant Hall.

3.  Plaintiff's allegation that defendant Hall used abusive language and contemporaneously "kneed" Plaintiff states a claim upon which relief can be granted, and is not barred by 42 U.S.C. § 1997e(e).

4.  Based on the allegations in the complaint, defendant Hall is not entitled to qualified immunity, as any reasonable correctional officer would have known, in January of 2007, that unprovoked abuse and battery of an inmate would violate the inmate's constitutional right to be free of malicious and sadistic violence.

5.  All of Plaintiff's claims for money damages against all defendants in their official capacities are barred by the Eleventh Amendment and the <u>Will</u> doctrine and must be dismissed.

6.    Plaintiff's Complaint fails to state a claim of supervisory liability for defendant Hall's conduct toward Plaintiff upon which relief can be granted.

### Recommendations

The undersigned respectfully **RECOMMENDS** that the presiding District Judge:

A.   Deny defendant Hall's motion to dismiss for failure to exhaust available remedies;

B.   Deny defendant Hall's motion to dismiss for failure to state a claim upon which relief can be granted as to Hall's actions toward Plaintiff;

C.   Deny without prejudice defendant Hall's claim to qualified immunity;

D.    Dismiss all of Plaintiff's claims for money damages against all defendants in their official capacities;

E.   Grant the MOCC defendants' motion to dismiss for failure to state a claim upon which relief can be granted;

F.   Permit this case to go forward against defendant Hall in his individual capacity, and require him to file an answer.

The parties are notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil

Procedure, Plaintiff shall have ten days (filing of objections) and three days (service/mailing) from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to Judge Faber and this Magistrate Judge.

The Clerk is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff and counsel of record.

 February 28, 2008
            Date

Mary E. Stanley
United States Magistrate Judge

19