```
         IN THE UNITED STATES DISTRICT COURT
      FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

**RICHARD L. LAWSON,**

      **Plaintiff,**

**v.**                                      **CIVIL ACTION NO. 2:07-0334**

**JEFF HALL, Sergeant,**
**Correctional Officer, Mount**
**Olive Correctional Complex,**
**in his individual capacity,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

Before the court is defendant Jeff Hall's Motion for Summary Judgment (Doc. No. 58), and related briefs (Doc. Nos. 59, 64, 68, 70, 72). On February 9, 2009, Magistrate Judge Mary E. Stanley entered a Proposed Findings and Recommendation ("PF & R"), in which she recommended that the court deny defendant's Motion for Summary Judgment, appoint an attorney to represent plaintiff, and schedule further proceedings. (Doc. No. 74.) Defendant submitted timely objections, of which the court has conducted a *de novo* review. See Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985).

### I.  Background

Plaintiff, Richard Lawson, is an inmate at the Mount Olive Correctional Facility ("MOCC"), where defendant formerly was

employed as a correctional officer.[1]  On May 23, 2007, he filed his complaint in the Circuit Court of Kanawha County, West Virginia, after which it was removed to this court pursuant to 28 U.S.C. §§ 1331 and 1441.  (Doc. No. 1.)  Lawson brings this action pursuant to 42 U.S.C. § 1983 for Hall's alleged violation of his rights under the Eighth Amendment to the United States Constitution, as well as the West Virginia Constitution, Article III, § 5.  (Id. at 13.)

Based on the evidence in the record, the material facts appear to be as follows.  In January 2007, Hall made racist and derogatory comments to Lawson, who is African American.  On one occasion, while in the presence of two other correctional officers, Lawson accused Hall of being a racist.  Hall responded that he was not a racist, but that he "just didn't like niggers."  He made a similar remark on another occasion when Lawson asked for a cinnamon roll: "[Hall] said did you read the sign and . . . Lawson said no and [Hall] said . . . I don't like niggers . . . ."[2]  (Doc. No. 64 Ex. B at 3.)  Defendant also at times made derisive comments to Lawson about his sexual orientation.

---

[1] By order dated March 24, 2008, the court dismissed defendants Robert Rhodes, Paul Parry, Thomas McBride, and Jim Rubenstein, leaving Jeff Hall as the sole defendant.  (Doc. No. 15.)

[2] Although Hall denies ever using "the N word" or making racist remarks to plaintiff, the statements of other correctional officers corroborate plaintiff's allegations on this point.

<mark>-2-</mark>

Around this same time, defendant administered a "knee strike" to plaintiff's groin when Lawson was about to pass through security to begin his work as a janitor in the Industries section of MOCC.[3]  Without provocation, Hall, who was standing next to the metal detector, grabbed plaintiff and brought his knee up into plaintiff's groin area.  Plaintiff exclaimed and fell to the ground in pain.  The strike, which slightly grazed plaintiff's genitalia, left plaintiff with a bruise on the inside of his upper right thigh area.  (Doc. No. 58 Ex. 3 at 9-15; Doc. No. 64 at 9-10.)  Lawson did not seek medical treatment for the bruise, but he did consult a mental health professional at MOCC as a result of feeling "tore up mentally" about the incident.[4] (Doc. No. 58 Ex. 3 at 24-25.)

## II.  Standard of Review

Turning to the issue of summary judgment, Rule 56 of the Federal Rules of Civil Procedure provides that

---

[3] Defendant denies that he ever touched plaintiff, and his fellow officers were not asked about this allegation when they gave their statements during MOCC's investigation of the incident.  (See Doc. No. 64 Exs. A-E.)  Because the court at this stage must draw factual inferences favorably to plaintiff, and because there is reason to view defendant's statement with suspicion, see supra note 2, the court accepts plaintiff's version of the incident for purposes of ruling on summary judgment.

[4] Although plaintiff's account of Hall's alleged misconduct includes reference to Hall throwing snowballs at him and Hall's ultimate termination for unrelated misconduct, the court finds it unnecessary to consider these allegations for purposes of defendant's summary judgment motion.

> [t]he judgment sought shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). The moving party has the burden of establishing that there is no genuine issue as to any material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). As the United States Supreme Court of Appeals stated in Celotex, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

Once the moving party has met its burden, the burden then shifts to the nonmoving party to produce sufficient evidence for a jury to return a verdict for that party.

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find, by a preponderance of the evidence, that the plaintiff is entitled to a verdict . . . .

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 250-51. Significantly, "a party opposing a properly supported motion for

summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. at 256.  Finally, "[o]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

### III.  Analysis

The Eighth Amendment to the United States Constitution forbids the unnecessary and wanton infliction of pain, including the infliction of pain that is utterly without penological justification.  Hope v. Pelzer, 536 U.S. 730, 737 (2002)(quoting Whitley v. Albers, 475 U.S. 312, 319 (1986); Rhodes v. Chapman, 452 U.S. 337, 346 (1981)).  To prove an Eighth Amendment violation, an inmate must satisfy two requirements.  "First, he must satisfy a subjective requirement that the force used by the corrections officers 'inflicted unnecessary and wanton pain and suffering.'"  Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir. 1998)(quoting Hudson v. McMillian, 503 U.S. 1, 6 (1993)). Second, he must satisfy an objective requirement that the "correctional officers' actions, taken contextually, were 'objectively harmful enough' to offend 'contemporary standards of decency.'"  Stanley, 134 F.3d at 634 (quoting Hudson, 503 U.S. at 8).  The core judicial inquiry in an excessive force case is

whether the force was applied "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7.

With respect to the subjective element, the court may consider a number of factors to determine whether the force used was "wanton and unnecessary": the need for the application of force; the relationship between the need and the amount of force actually used; the threat reasonably perceived by the officer; and any efforts made to temper the severity of the force. Id. at 7 (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)). "The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." Hudson, 503 U.S. at 7.

It is with regard to the objective element that courts have given the extent of the injury more sway, but even here, the nature of the protection afforded by the Eighth Amendment does not lend itself to absolute limitations. In Hudson, the Supreme Court explained that the "objective component of an Eighth Amendment claim is . . . contextual and responsive to 'contemporary standards of decency.'" Id. at 8-9. In this respect, excessive force claims are distinct from claims based on conditions of confinement or on medical needs:

> In the excessive force context, society's expectations are different. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical

>       punishment, no matter how diabolic or inhuman, inflicting
>       less than some arbitrary quantity of injury.  Such a
>       result would have been as unacceptable to the drafters of
>       the Eighth Amendment as it is today.

Id. at 9 (internal citations omitted).  The Hudson court went on to acknowledge that the Eighth Amendment does not protect against the use of *de minimis* physical *force*, unless the force is of a sort "'repugnant to the conscience of mankind.'"  Id. at 9-10 (quoting Whitley, 475 U.S. at 327).

In Norman v. Taylor, 25 F.3d 1259 (4th Cir. 1994), the Fourth Circuit construed Hudson as permitting the conclusion that, "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis*."  Id. at 1263.  In so ruling, the court noted the possibility that force might be applied in such a way that it leaves little or no injury, yet is still impermissible under the Eighth Amendment.  Id. at 1263 n.4.  It determined, however, that such cases would present extraordinary circumstances either because the force would be of a sort "repugnant to the conscience of mankind," or because it would inflict more than *de minimis* pain.  Id.

Defendant argues that plaintiff's alleged injuries are *de minimis* under Norman and related Fourth Circuit precedent, and that his Eighth Amendment claim must fail on that ground.  (Doc. No. 59 at 8-12 (citing Riley v. Dorton, 115 F.3d 1159 (4th Cir. 1997).)  To be sure, Fourth Circuit case law indicates that the

-7-

injuries plaintiff alleges might under some circumstances be classified as *de minimis*. See Taylor v. McDuffie, 155 F.3d 479, 484 (4th Cir. 1998)("Indeed, temporary swelling and irritation is precisely the type of injury this Court considers *de minimis*."). The force Hall is alleged to have used, however, may still have been impermissible even in the absence of severe injuries.

Because Hudson directs that the objective requirement in an Eighth Amendment claim involves a "contextual" inquiry, the court must consider the circumstances of the force Hall allegedly applied. The importance of context was emphasized by the Fourth Circuit in Stanley v. Hejirika, 134 F.3d 629 (4th Cir. 1998). In that case, an inmate claimed injuries similar to those sustained by the plaintiff in Hudson – bruises, swelling, loosened teeth, and a cracked dental plate – but as a result of different circumstances; the defendant officers in Stanley acted in the course of quelling a disturbance, whereas the assault in Hudson stemmed from an argument. The Stanley court discounted the plaintiff's attempt to draw a comparison to Hudson, explaining that "[the plaintiff] overlooks the fact that the injuries in Hudson were inflicted deliberately to hurt, without justification, and as punishment for a personal disagreement between a guard and a prisoner. That context is important, indeed essential, to determining whether force is excessive." Id. at 637.

In Stanley, Norman, Riley, and Taylor, there was at least a measure of justification for the use of some force. Here, in contrast, the evidence reveals no penological reason to inflict a knee strike. Drawing factual inferences in favor of plaintiff, as the court must, it appears that defendant struck plaintiff purely out of animus based on plaintiff's race and perceived sexual orientation.[5] Under these circumstances, Hall's alleged use of force violated the Eighth Amendment. See Melvin v. North Carolina Dep't of Corrections, No. 95-6538, 1995 U.S. App. LEXIS 23300, at *3 (4th Cir. Aug. 21, 1995)(even where injuries were insignificant, use of force as retaliation for prisoner's use of racial slur may be "repugnant to the conscience of mankind"). See also Watford v. Bruce, 126 F. Supp. 2d 425, 427 (E.D. Va. 2001)(where assault on inmate was unprovoked, court held that the "Eighth Amendment surely does not afford guards . . . with the cloak of insulation from cruel and unusual punishments inflicted upon an inmate in custody so long as the assault is not severe."); Sanders-El v. Spielman, 38 F. Supp. 2d 438, 439-40 (D. Md. 1999)(where inmate suffered bruises, black eye, and pain in

---

[5] Defendant is correct that the epithets he is alleged to have used do not, in and of themselves, amount to constitutional violations. See Morrison v. Martin, 755 F. Supp. 683, 687 (E.D.N.C. 1990). Rather, they are relevant to the context in which the knee strike was committed, and with respect to defendant's intent in committing it.

elbow from unprovoked assault, defendant was denied summary judgment and Taylor was distinguishable).

Because defendant asserts that he is entitled to qualified immunity, the court must also consider whether the right plaintiff asserts was clearly established at the time of the violation. Leverette v. Bell, 247 F.3d 160, 166 (4th Cir. 2001). In view of the Supreme Court's decision in Hudson, the court finds that it was.

## IV.  Conclusion

For the reasons set forth above, the court **OVERRULES** defendant's objections to the magistrate judge's PF & R.  (Doc. No. 76.)  The court further **DENIES** defendant's motion for summary judgment (Doc. No. 58), and **REFERS** this matter to Magistrate Judge Stanley for further proceedings, including appointment of an attorney to represent plaintiff and scheduling of any necessary pretrial proceedings.

The Clerk is directed to send copies of this Memorandum Opinion and Order to counsel of record and to plaintiff, *pro se*.

It is **SO ORDERED** this 16th day of July, 2009.

ENTER:

David A. Faber
Senior United States District Judge